505 A.2d 117

**FORT WASHINGTON COMMUNITY HOSPITAL, INC., et al**

v.

**SOUTHERN MARYLAND HOSPITAL CENTER, et al.**

**No. 394, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 5, 1986.

Arvin W. Rosen (William L. Siskind and Siskind, Burch, Grady & Rosen, on brief; Leslie H. Wiesenfelder and Dow, Lohnes & Albertson, Washington, D.C., of counsel), Baltimore, for appellant, Doctors Hosp.

Robert V. Barton, Jr. (Ober, Kaler, Grimes & Shriver, on brief), Baltimore, for appellant, Greater Southeast Community Hosp. Corp.

Ellis J. Koch and O'Malley, Miles, McCarthy & Harrell on brief, upper Marlboro, for appellant, Fort Washington Community Hosp.

Gary R. Alexander (Alexander & Cleaver, James A. Cleaver and Barbara M. Radcliff, on brief), Fort Washington, for appellee, Southern MD. Hosp. Center.

Jack P. Hartog, Sp. Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Jennifer L. Robbins, Asst. Atty. Gen., on brief), Baltimore, for appellee, State of Maryland, Health Resources Planning Comn.

Argued before BLOOM and ROBERT M. BELL, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

Opinion by W. ALBERT MENCHINE, Judge, Specially Assigned.

On March 11, 1983, Southern Maryland Hospital Center (Southern), a subsisting general hospital in Prince George's County, filed an application with the State Health Resources Commission (Commission) for the issuance of a certificate of need for a proposed construction project that would add 120 beds to its existing or authorized 208 beds at a total cost of $14,825,900. Such a project required Commission approval under the provisions of Health General Article § 19–115e, h and k (1985 Cum.Supp.).

The Commission on February 14, 1984, issued a "conditional" certification of need, the precise form of which will be stated *infra.* An appeal to the Circuit Court for Prince George's County, pursuant to the provisions of Health General Article § 19–121, was taken by Fort Washington Community Hospital, Inc. (Fort Washington), Greater Southeast Community Hospital (Greater Southeast) and Doctors' Hospital of Prince George's County (Doctors).[1] The Circuit Court for Prince George's County entered judgment affirming the decision of the Commission. Fort Washington, Greater Southeast and Doctors have filed a

---

1. Fort Washington and Doctors are general hospitals functioning in Prince George's County. Greater Southeast is a general hospital functioning in the District of Columbia.

further appeal to this Court. The appellees are Southern and the Commission.[2]

Federal and State statutes and regulations control the issuance of a certificate of need. The necessity for such joint Federal-State action was declared by the Congress in 42 U.S.C. § 300k, which reads as follows:

*Congressional findings*

(a) The Congress makes the following findings:

(1) The achievement of equal access to quality health care at a reasonable cost is a priority of the Federal Government.

(2) The massive infusion of Federal funds into the existing health care system has contributed to inflationary increases in the cost of health care and failed to produce an adequate supply or distribution of health resources, and consequently has not made possible equal access for everyone to such resources.

(3) The many and increasing responses to these problems by the public sector (Federal, State, and local) and the private sector have not resulted in a comprehensive, rational approach to the present—

(A) lack of uniformly effective methods of delivering health care;

(B) maldistribution of health care facilities and manpower; and

(C) increasing cost of health care.

(4) Increases in the cost of health care, particularly of hospital stays, have been uncontrollable and inflationary, and there are presently inadequate incentives for the use of appropriate alternative levels of health care, and for the substitution of ambulatory and intermediate care for inpatient hospital care.

(5) Since the health care provider is one of the most important participants in any health care delivery system,

---

2. Pursuant to Maryland Code Health General § 19–120(d) (1985 Cum. Supp.), the "Commission is a necessary party at all levels of the appeal."

health policy must address the legitimate needs and concerns of the provider if it is to achieve meaningful results; and, thus, it is imperative that the provider be encouraged to play an active role in developing health policy at all levels.

(6) Large segments of the public are lacking in basic knowledge regarding proper personal health care and methods for effective use of available health services.

(b) In recognition of the magnitude of the problems described in subsection (a) of this section and the urgency placed on their solution, *it is the purpose of this Act to facilitate the development of recommendations for a national health planning policy, to augment areawide and State planning for health services, manpower, and facilities, and to authorize financial assistance for the development of resources to further that policy.*

(Emphasis added).

Congressional implementation of those findings are to be found in 42 U.S.C. §§ 300k through 300n (Federal Act), the pertinent parts of which will be cited or quoted *infra.*

State implementation of those findings are to be found in Maryland Code, Health General Article §§ 19–101 through 19–125, the pertinent parts of which will be cited or quoted *infra.*[3] A condition precedent to participation in the financial benefits offered under the Federal Act required the State to provide a "State Program" for the performance within the State by a "State Agency"[4] of the functions prescribed by § 300m–2, including, *inter alia,* the duty to administer a State certificate of need program, which applies to the obligation of capital expenditures within the State and the offering within the State of new institution-

---

3. Maryland's purpose to participate in the Federal Program was initiated prior to legislative action by an agreement between the Governor and the Federal Government to carry out the State's planning and development function pursuant to 42 U.S.C. § 300m.

4. The Commission was designated such a "State Agency" by Health General Article § 19–107(b)(1).

al health services and the acquisition of major medical equipment and which is consistent with standards established by the Secretary by regulation. A certificate of need program shall provide for procedures and penalties to enforce the requirements of the program. In performing its functions under this paragraph the State Agency shall consider recommendations made by health systems agencies under section 300 1–2(f) of this title.

Under the Federal Act (§ 300m–1) the State agency is required "to perform its functions in accordance with procedures and criteria conforming to the requirements of section 300n–1 that in pertinent part provides as follows:

*Any decision of a State Agency to issue or to not issue a certificate of need or to withdraw a certificate of need shall be based solely (i) on the review of the State Agency conducted in accordance with procedures and criteria it has adopted in accordance with this section and regulations promulgated under this section, and (ii) on the record established in administrative proceedings held with respect to the application* for such certificate or the Agency's proposal to withdraw the certificate, as the case may be. Any decision of a State Agency to approve or disapprove an application for an exemption under section 300m–6(b) of this title shall be based solely on the record established in the administrative proceedings held with respect to the application.

(Emphasis added).

The State Act (§ 19–115(c)) requires the Commission to adopt rules and regulations[5] for applying for and issuing certificates of need and provides (§ 19–118(d)) that "the Commission alone shall have final nondelegable authority to act upon an application for a certificate of need...."[6]

---

**5.** Pertinent COMAR provisions adopted pursuant to that mandate will be cited or quoted *infra.* All COMAR regulations referred to herein are those that were in effect on March 11, 1983, now repealed. *See* 10 Md.Reg. 536 (1983).

**6.** Subject to exceptions not here pertinent.

The Federal Act (§ 300n–1(c)) requires the State Agency (the Commission) to consider at least fourteen criteria in its determination whether a certificate of need should be granted. The Maryland Regulations adopted by the Commission pursuant to § 19–115(c) require the Commission to consider similar criteria in such a determination (COMAR 10.24.01.-06F(1)) and written documentation of other factors where, as here, the certificate of need relates to an application by a hospital (COMAR 10.24.01.06F(a)).

The Federal Act provides that a certificate of need must authorize "[t]he obligation of only those capital expenditures found to be needed by the State Agency," 300m–6(a)(2), and in subsection 300m–6(a)(4) provides that:

> *In issuing a certificate of need, the State shall specify in the certificate the maximum amount of capital expenditures which may be obligated under such certificate.*

(Emphasis added).

A regulation adopted by the Commission (COMAR 10.24.-01.06K) provides in pertinent part as follows:

> Notice that the facility or project is certified shall be made in writing by the State Agency to those agencies responsible under the licensure program and other agencies that may have interests or responsibilities related to the project. The notice shall be given at the time the applicant and the HSA are notified. *The notice of certification shall contain at a minimum the following information:*
>
> (1) The nature and scope of the certified health services or facilities, described in suitable detail;
>
> (2) *The actual capital costs associated with the certified project, to include construction, equipment acquisition (whether by purchase or lease), architects and consultants' fees, and all other costs (other than financing costs) to be incurred by the applicant in order to bring the project to completion; and*

(3) *The total principal amount of funds to be borrowed (if any), and a description of the terms of the financing mechanism through which this borrowing will be accomplished.*

(Emphasis added).

Purporting to act in accord with the mandates of the Federal and State Acts and the regulations adopted pursuant thereto, the Commission issued a certificate of need to Southern in the following form:

MARYLAND HEALTH RESOURCES PLANNING COMMISSION

*Certificate of Need*

TO:  Francis P. Chiaramonte, M.D.   February 14, 1984
     Chief Executive Officer            (Date)
     Southern Maryland Hospital Center
     7503 Surratts Road
     Clinton, Maryland  20735

RE:  Expansion of Acute Medical/   83–16–1114
     Surgical Services             (Docket Number)

PROJECT DESCRIPTION

The project is for the construction of an addition to the existing hospital to house an additional 120 medical/surgical beds, to relocate and expand the ambulatory surgery department, and to purchase some additional major moveable and minor moveable equipment. *These project components and the total capital cost of the project will be modified consistent with the conditions imposed below. Revised capital and operating projections, manpower projections, and architectural plans will be submitted, consistent with these conditions, at which time this Certificate of Need will be administratively modified to include the modified project description and the cost of the project.*

(Emphasis added).

ORDER

The Maryland Health Resources Planning Commission hereby issues this project a Certificate of Need subject to the following conditions:

1. Within 180 days of the date of issuance of the Certificate of Need, the applicant shall amend the number of beds proposed to reflect the addition of 37 medical/surgical beds and the deletion of an ambulatory surgical program. Simultaneously, a revised statement indicating revenues, expenses, costs, charges, and capital costs (including source of any loans at the proposed or lower interest rate contained in the application) at the level of 37 additional medical/surgical beds, a revised statement indicating manpower needs at the level of 37 additional medical/surgical beds, and a revised architectural plan for the 37 additional medical surgical bed addition must be submitted to the Commission for its review.

2. Within 60 days from the date of this Certification, SMHC must revise its policy regarding ability to pay so that it meets the requirements of SHP accessibility standard IA–3; and must, where appropriate, submit written transfer agreements required by SHP continuity standard IA–6.

3. Within 60 days from the date of this Certification, SMHC must document that the current placement of its critical care units constitutes the lowest-cost configuration feasible or provide a proposal for meeting HSP cost standard 5d.

4. If it decides to establish a definitive observation unit, SMHC must supply within 60 days data demonstrating that the higher rate applicable to this unit will not invalidate the overall cost savings claimed to result from shortened lengths of stay in critical care beds, and reduced average medical/surgical rates; and must explore the feasibility and desirability of separate licensure of such a unit and report the results to the Commission.

In accordance with Section .07.C(1)(b) of the Regulation COMAR 10.24.01 (effective January 25, 1980), the project is subject to the following performance requirements:

1. Obligation of not less than 51% of the certified capital expenditure as expenditure as documented by a purchase order, construction contract or other suitable documentation within 30 months of the date of Certification.

2. Initiation of construction within 6 months of the effective date of a binding construction contract.

3. Documentation that the certified project has been licensed or has otherwise met all applicable legal requirements and is providing the certified services within 36 months of the effective date of capital obligation.

*Failure to meet these performance requirements shall render this Certificate of Need null and void.* (Emphasis added).

Certificate of Need is a pre-requirement of licensure. *This Certificate of Need is not a license to operate the facility.*

If it is necessary to make any changes to the certified project before approved first use of the facility, the State Agency must be notified and approval of the change must be received prior to implementation of the change/or obligation of any additional funds in accordance with Section .14 of Regulation 10.24.01.

Your architect or engineer is required to contact the Plans Review and Approval Section of the Department of Health and Mental Hygiene in order to ascertain the information on drawings and specifications which is required by law for submission and approval.

Quarterly status reports must be submitted to the Maryland Health Resources Planning Commission beginning three months from the effective date of Certification and continuing through completion of the project.

Pre-licensing approval must be requested not less than 60 days nor more than 120 days prior to the planned first use of the certified project specifying the anticipated date of first use. The request for pre-license certification will be reviewed in accordance with Section .15 of Regulation 10.24.01. A State license to operate the facility cannot be issued by the licensing agency until the MHRPC has issued pre-licensing certification of the project.

Your acknowledgement of your receipt of this Certification is requested within thirty (30) days.

MARYLAND HEALTH
RESOURCES PLANNING
COMMISSION

## I.

### *Necessity for Decision on the Merits*

Several contentions are made by the respective parties that this appeal does not require a decision on the merits.

Appellants argue that the hearing before a single commissioner (Commissioner F. Perry Smith) was a nullity, in violation of the Maryland Act § 19–118(d)(2) that reads as follows: "The Commission may delegate to a committee the responsibility for review of an application for a certificate of need, including the holding of an evidentiary hearing." The contention is without merit.

■ While in some usage the word "committee" well may imply a multiple membership, in the subject statute the same sub-section provides that a Commission hearing shall be held "in accordance with the contested case procedures of the Administrative Procedure Act" (Maryland Code State Government § 10–201 et seq.), which specifically authorize the conduct of hearings before a single officer. In *State v. Loscomb*, 291 Md. 424, 432, 435 A.2d 764, 768 (1981), it was said:

It is a general rule of statutory construction that statutes that deal with the same subject matter, share a common

purpose, and form part of the same general system are in *pari materia* and must be construed harmoniously in order to give full effect to each enactment.

We hold that the designation of a single commissioner to act as a committee for the Commission accords with the statutes.

Southern contends that the issues presented here were not raised before the Commission, citing the holding in *Bulluck v. Pelham Woods Apts.*, 283 Md. 505, 518, 390 A.2d 1119, 1127 (1978), that alleged procedural and evidentiary errors not raised before an administrative agency may not be raised for the first time in judicial review proceedings. Examination of the record, however, establishes that all appellants filed exceptions to the single Commissioner's report prior to the passage of the order of February 14, 1984, from which the appeal in this case was taken, and participated in the hearing before the full Commission prior to the adoption of the report and the issuance of the certificate of need by it.

At the hearing upon the exceptions before the full Commission, counsel for Doctors presented, *inter alia*, the following explanation for its opposition to the proposed order:

I think there is a very dangerous precedent that may be set in the case and that is [to] approve, submit, recommend any application which in many respects doesn't meet the criteria Health Systems Plan as noted in the recommendation itself.... There was an application submitted for 120 beds which was tailored for 120 beds, the cost analysis, the attendant information necessary for such an application was submitted. An examination of the recommendation will show that this approval is conditioned upon many things. Much information has to be supplied at a later date.... You really don't know what you're approving. To say that you can supply this information later on is merely to abdicate your review responsibility as we see it.... I've listed on page two of my exceptions, specific areas this application was found not

to be consistent with the criteria which has been established for review.

Counsel for Greater Southeast brought to the attention of the full Commission, *inter alia,* a contention

> that it is irregular for an application to be approved prior to an applicant providing financial feasibility.... It seems that an application being brought down from 120 to 37 beds represents a substantial change and therefore should have to be reviewed at the H.S.A. level once again.[7]

Counsel for Fort Washington told the full Commission that he shared the prior comments by other counsel as briefly set forth *supra,* "especially those of the Clinton Community Hospital." [8] He added, *inter alia:*

> [Y]our statute further requires that your Committee can do one of two things, it can approve or it can deny. Your Committee's proposal does neither.... It recommends a series of changes. Nowhere in your statute is there any procedural authority for what you are proposing to do.

Appeal from a decision of the Commission, authorized by § 19–121, provides, in pertinent part, that "[a]ny aggrieved party ... may take a direct judicial appeal within 30 days of the final decision of the Commission." § 19–120, in pertinent part, defines an aggrieved party as:

> A person, including any health care facility ... who (i) ... has presented a position on a health care project to the Commission *before the decision of the Commission*

---

7. In regulations adopted by the Commission under the authority of Health General Article § 19–107, HSA means the federally designated health system agency for a specific area or region of Maryland.

8. Counsel for Clinton Community Hospital (not an appellant here) had told the Commission, *inter alia* :

> We find ourselves not being afforded an equal opportunity to compete with other applicants.... [At] the end of the line that we are not even given the opportunity to have our [earlier] application heard on equal basis with Southern Maryland.... This does not seem like a fair and proper way to conduct business of this Commission....

*on that health care project;* and (ii) is affected adversely by the decision of the Commission on the project.[9]

(Emphasis added).

We hold that all appellants presented a position to the Commission on the issues presently before this Court before the decision of the Commission had been made. This Court, accordingly, must consider the merits of the Commission's action.

## II.

### *Decision on the Merits*

An appeal by a person adversely affected by a final decision of a State Agency (the Commission) is authorized under both the State and Federal Acts. Health General Article § 19–121; 42 U.S.C. § 300n–1(b)(12)(E). The Court's role in such an appeal is narrow. Under the Federal Act "[t]he decision of the State Agency shall be affirmed upon such judicial review unless it is found to be arbitrary or capricious or not made in compliance with applicable law."

These statutory provisions accord with the standard prescribed for the review of administrative appeals generally by judicial decisions. *See Hoyt v. Police Commissioner,* 279 Md. 74, 89, 367 A.2d 924, 932–33 (1977), and cases cited therein.

Despite the statutory complexity of the case, the dichotomy between the appellants and the appellees can be briefly and succinctly stated:

Appellants argue that the Commission (a) failed to comply with statutory mandates and (b) in legal effect made no decision upon whether Southern was or will be entitled to a certificate of necessity.

---

**9.** All appellants had filed applications for additional bed construction before the Commission that for various reasons were not heard. The decision of the Commission would foreclose any further opportunity for them to obtain a certificate of need for such a project.

Appellees argue (a) that the statutory mandates have been met by necessary inferences that may be drawn from the evidence and (b) that the Commission is granted specific statutory authority to grant a certificate of need subject to conditions such as were imposed in the subject case.[10]

Southern had applied for a 120-bed addition coupled with an expanded ambulatory surgery department. The Commission, however, issued a contingent certificate of need for a 37-bed addition and denied the ambulatory surgery department expansion.

At the outset, we shall reject the contention of the appellants that the Commission lacked authority upon its own motion to reduce the number of beds applied for in the grant of a certificate of need.

The record quite clearly supports the Commission's finding that the need for additional hospital beds is limited to a maximum of 37 beds in Prince George's County. The statutes vest in the Commission the non-delegable duty to restrict construction of hospital facilities to those required for implementation of the State health plan by the facility best suited to serve all elements of the population within the area in which it will function at a determined reasonable cost.

A necessary corollary to the exercise of that duty is the power to reduce, when necessary, the number of beds sought by an applicant.

The record made before the Commission encompassed hearings conducted by Commissioner Smith on December 8, 9 and 16, 1983, and a hearing before the full Commission for consideration of exceptions by the appellants and others on February 14, 1984. No testimony was taken at the latter hearing. The exceptants were limited to arguments on their behalf by counsel. The order appealed from followed. The transcript of testimony consists of 855 pages,

---

10. Health General Article § 19–118(d)(4) (1985 Cum.Supp.); 42 U.S.C. § 300m–6.

in the course of which 40 exhibits were received in evidence. Nine additional volumes of the record below contain many hundreds of documents filed administratively between the time of the filing of Southern's application to the time of the trial court's order affirming the Commission.

Eight hundred thirty-six pages of the transcript of testimony and 37 of the exhibits admitted in evidence relate to Southern's application for the addition of 120 beds.

Only 19 pages of the testimony and 3 [11] of the exhibits specifically relate to the 37 bed addition conditionally authorized by the Commission. That evidence was brought into the proceedings after protest by counsel for Southern as follows:

[By Mr. Alexander]:

I would like the record, Mr. Smith, if I could just to state that our application is for 120 beds. We have applied for that and this testimony should in no way be construed as a modification of our request. We are simply trying to answer the commissioner's question which you certainly have a right to ask as to how we would handle that or what would be involved. That's why we are supplying the information. I don't want the record to think—

MR. SMITH: You made it very clear.

Q.   Mr. Suriani, have you, in fact, considered the possibility constructionwise of how the hospital would handle 37 beds and how it would be treated if that was, in fact, granted?

A.   Yes, sir, I have. I, too, am under the understanding Mr. Smith did request of us to throw together some figures regarding 37 beds.

---

11.  Exhibits 38, 39 and 40 show, respectively: (a) an undetailed horizontal second floor plan; (b) an undetailed horizontal first floor plan for ambulatory surgery (that was rejected as a needed facility by the Commission) and (c) an undetailed vertical plan showing a proposed connection between the existing hospital building and a proposed two-story and ground floor addition (not now required because of the Commission's rejection of Southern's requested ambulatory surgery facility).

MR. SMITH: My request. Let's get this straight right now. My request was, had you given consideration to it or is it feasible?

Q. You say throw together figures. Have you made some type of analysis?

A. Yes, I have, sir.

In consequence, there is an extreme paucity of evidence relating to a 37-bed facility.[12]

■ We conclude from our examination of this record that the Commission's grant of the subject certificate of need to Southern was not made in compliance with the law. We explain.

The certificate of need issued by the Commission in this case plainly is in violation of a specific requirement imposed upon it by the Federal Act and in violation of a specific requirement of one of its own regulations.

The Federal Act, § 300m–6(a)(4), provides that

*In issuing a certificate of need, the State shall specify in the certificate the maximum amount of capital expenditures which may be obligated under such certificate.*

(Emphasis added). Counsel for the Commission seeks to justify its failure to comply with this requirement by contending (1) that the Federal Act is not binding on the State, and alternatively, (2) that Congress has prohibited termination of designation agreements and has continued appropriations to non-complying states. We reject both contentions. As to the first, the Legislature of Maryland in § 19–102(c) said:

This State recognizes the Federal Act and any amendment to the Federal Act that does not require State legislation to be effective.

---

12. That evidence consisted of 19 pages of testimony, commenced under protest, that was lacking in any construction cost figures or details of construction, or how the beds would be utilized in the overall hospital plan.

We regard this subsection as stating, without ambiguity, that the Commission *must* comply with the Federal Act.[13] As to the second contention, we are persuaded that the fact that Congress may have provided a pork barrell roll to non-complying states is without legal effect in this State. The Maryland Legislature has gone to the length of providing that Maryland's adherence to the purpose and scope of the Federal Act is so firmly fixed that the requisites of its own statute will continue that purpose and scope, even in the face of a federal repeal. *See* § 19–102(c).

Regulations adopted by the Commission under the authority granted by § 19–107(a)(2), in relevant part, require the Commission to take the following action when it grants a certificate of need:

> Notice of Certification. Notice that the facility or project is certified shall be made in writing by the Commission to those agencies responsible under the licensure program and other agencies that may have interests or responsibilities related to the project. *The notice shall be given at the time the applicant and the local health planning agency are notified.* The notice of certification shall contain at a minimum the following information:
>
> (1) The nature and scope of the certified health services or facilities, described in suitable detail;
>
> (2) The actual capital costs associated with the certified project, to include construction, equipment, acquisition (whether by purchase or lease), architects and consultants' fees, and all other costs (other than financing costs)

---

13. The preface to regulations adopted by the Commission includes the following language:

> Effective February 22, 1977, Title 42, CFR, Part 123, Subpart E, §§ 123.401–123.411 require each state health planning and development agency to provide for a program of certificate of need and review of new institutional health services. *The State Health Resources Planning Commission shall use the following regulations to administer a Certificate of Need Program in accordance with federal and State law.*

(Emphasis added).

to be incurred by the applicant in order to bring the project to completion;

(3) The total principal amount of funds to be borrowed (if any), and a description of the terms of the financing mechanism through which this borrowing will be accomplished. . . .

COMAR 10.24.01.06K (emphasis added). It is instantly clear that compliance with this regulation by the Commission is impossible of performance because no evidence was received as to sub-parts (2) and (3) above with respect to a 37-bed facility.

There is more. The Commission, in its grant of this certificate of need, did so with what it described as four "conditions," relying for its action upon § 19–118(d)(4), which provides: "The full commission shall, *after determining that the Committee's report is complete,* vote to approve, *approve with conditions* or deny the application on the basis of the committee's recommendation and the whole record before the committee." (Emphasis added). The questions arise, accordingly, (1) whether the Committee's report was complete, and (2) whether what the Commission calls "conditions" in its order are "conditions" within the meaning of the statute. We find that both must be answered in the negative.

### Completeness of the Committee's Report

■ The Commission is required by statute to make a determination "that the Committee's report is complete." (§ 19–118(d)(4)). The order passed by the Commission makes manifest that the report was not complete. Indeed, after considering the additional evidence it concedes is essential to ultimate determination, the Commission could conclude that Southern has not offered satisfactory proof of its entitlement to a certificate of need because of deficits in the applicant's capacity or because other institutions would better provide a health care system in the concerned area offering "for all citizens, financial and geographic access to quality health care at a reasonable cost." § 19–102(a)(1).

The Commission in its contingent certificate of need speaks of four "conditions." In fact, Southern is ordered to submit additional evidence bearing upon not less than six statutory criteria the Commission is required to consider *before* a certificate of need may be granted.

> Within 180 days of the date of issuance [the applicant shall submit]
>
> (a) A revised statement indicating revenues, expenses, costs, charges and capital costs (including source of any loans at the proposed or lower interest rate contained in the application) at the level of 37 additional medical/surgical beds.

Minimum criteria fixed by 42 U.S.C. § 300n–1 [14] includes the requirement that the Commission shall include consideration,

> In the case of a construction project—
>
> (A) the costs and methods of the proposed construction, including the costs and methods of energy provision, and
>
> (B) the probable impact of the construction project reviewed on the costs of providing health services by the person proposing such construction project and on the costs and charges to the public of providing health services by other persons.

*See also* Health General Art., § 19–115(k); 42 C.F.R. § 123.412(a)(4) and (15). The Maryland Regulations require consideration "[i]n the case of construction projects, the costs and methods of the proposed construction, including the costs and methods of energy provision and the promotion of energy conservation programs." COMAR 10.24.-01.06B(2)(1).

As stated *supra,* the applicant produced no evidence relating to the construction of a 37 bed facility beyond what a single witness described as "thrown together" by him to indicate a square footage cost within acceptable limits.

---

**14.** 42 U.S.C. § 300m–1 requires "the State Agency to perform its functions in accordance with procedures and criteria [conforming] to the requirements of § 300n–1."

In the course of its "finding of facts," the Commission, after speaking solely to the proposed financing of the 120-bed addition (the record contains no evidence concerning financing of a 37 bed facility), stated that the applicant "has not" provided evidence of the availability of such funding. The Commission then stated that "the requirements of COMAR 10.24.01.06(2)(g) are partially met. As a condition to any certification, the applicant must provide evidence of the availability of FHA or other appropriate funding. . . ." It added: "With respect to the 37-bed alternative,"

> the [cost] criterion is met provided the applicant submits a detailed description of the services it intends to provide and the accompanying construction costs . . . and that financial feasibility has been met, provided that the applicant submits to the Commission detailed projections of revenues and costs for a 37 bed addition. . . . The proposed construction inflation rate is unreasonably high and any approval of the applicant would require [Southern to] reduce its inflation factor. . . .

(Emphasis added). In sum, the Commission's comments demonstrate it needed further evidence before the requirements of this minimum criterium could be met.

> (b) A revised statement indicating manpower needs at the level of 37 additional medical/surgical beds. . . .

(Emphasis added). Minimum criteria fixed by 42 U.S.C. § 300n–1 include the requirement that the Commission shall include consideration of ((c)(6)(A)), "[t]he availability of resources (including health manpower, management personnel, and funds for capital and operating needs) for the provision of such services." See also 42 C.F.R. 123.412(9) (Criteria for State Agency Review). The Maryland regulations require consideration of "the availability of resources (including health manpower, management personnel, and funds for capital and operating needs) for implementation of the proposal, and the consideration of alternative uses of these resources." COMAR 10.24.01.06B(g).

The "findings of fact" by the Commission included:

The Commission finds that the applicant meets the criterion [of ancillary and support services] *only upon providing to the Commission a revised projection* of personnel requirements, by type and service, for an addition of 37 beds.

Here, again, the Commission plainly stated that further evidence must be produced by Southern before accreditation.

(c) A revised architectural plan for the 37 additional medical/surgical bed addition *must be submitted to the Commission for its review.*

(Emphasis added). Minimum criteria fixed by 42 U.S.C. § 300n–1 include, *inter alia,* the requirement that the Commission shall include consideration of ((c)(9)(A)), the costs and methods of the proposed construction, including the costs and methods of energy provision. *See also* 42 C.F.R. § 134.412(a)(15)(i). For Maryland regulation, see COMAR 10.24.01.06B(2)(1), *supra.*

(d) Within 60 days from the date of this Certificate [Southern] must revise its policy regarding ability to pay so that it meets the requirements of [the State Hospital Plan].

Minimum criteria fixed by 42 U.S.C. 300n–1 include the requirement that the Commission shall include consideration of ((c)(6)(E)), "the extent to which such proposed services will be accessible to all the residents of the area to be served by such services." *See also* 42 C.F.R. § 123.412(5), (6) and § 123.413 (requiring that "for each project it approves, the State agency shall make a written finding [which shall take into account the current accessibility of the facility as a whole] or the extent to which the project will meet the State Agency's criteria...."). The Maryland regulations require consideration of "the need for the proposed health services of the population served or to be served, including ... the extent to which low income persons ... and other underserved groups are likely to have access to those services."

In what the Commission described as its "Findings of Fact and Conclusion of Law and Final Order," the Commission declared:

> The Commission is concerned about a current policy of the applicant that distinguishes between Medicaid patients requiring emergency care and Medicaid patients who could, in the opinion of the hospital, safely be transported to other hospitals. This latter group would not be treated by the applicant and would, instead, be bypassed to a "state-approved" facility at the expense of the applicant (SMHC Exhibit 13). The existence of the current policy (dated June 3, 1982), limits access to the facility. *The policy makes it impossible for the Commission to find that the accessibility standard is being met.* Any approval of the project would be conditional upon a change in the policy, allowing transport of only those Medicaid patients for whom treatment would be more appropriately provided at another facility.

(Emphasis added). The Commission added:

> The Commission accepts that a portion of SMHC's patient population will be unable to pay for service but finds that SMHC has not provided written documentation of a charity care policy including provisions for determining ability to pay. *The Commission finds that the standard has not been met and that any approval of this project would be subject to a condition to bring SMHC into compliance with SHP accessibility standard 3b.*

(Emphasis added). Again, additional evidence would be required before a determination could be made as to whether Southern would or could meet this minimum requirement.

> (e) Within 60 days from the date of this Certification [Southern] must document that the current placement of its critical care units constitutes the lowest cost configuration feasible or provide a proposal for meeting HSP cost standard.

Minimum criteria fixed by 42 U.S.C. 300n–1 include the requirement that the Commission shall include considera- tion of ((c)(9)(B)), "the probable impact of the construction project reviewed on the costs of providing health services by the person proposing such construction project and on the costs and charges to the public of providing health services by other persons." *See also* 42 C.F.R. § 123.- 412(a)(3), (15). The Maryland Act (§ 19–114(e)), relating to the certificate of need program, requires that the standards of the State Health Plan "shall address the availability, accessibility, cost and quality of health care." The Mary- land regulations, in pertinent part, require consideration of "the immediate ... financial feasibility of the proposal." 10.24.01.06B(2)(e).

In its "Findings of Fact," the Commission stated:

As a condition to any certification, [Southern] must supply estimates of personnel FTES and costs based on a 37 bed project.

*As a condition to any certification*, the Commission would require the applicant to provide detailed estimates of its costs and to demonstrate that these costs are reasonable when compared to the Marshall and Swift evaluation quarterly.

(Emphasis added).

(f) If it decides to establish a definitive observation unit [Southern] must supply within 60 days data demonstrat- ing that the higher rate applicable to this unit will not invalidate the overall cost savings claimed to result from shortened lengths of stay in critical care beds, and re- duced average medical/surgical rates; and must explore the feasibility and desirability of separate licensure of such a unit and report the results to the Commission.

Minimum criteria fixed by 42 U.S.C. 300n–1 include the requirement that the Commission shall include considera- tion of ((c)(10)), "[t]he special circumstances of health ser- vice institutions and the need for conserving energy," and (11) "[i]n accordance with section 300k–2(b) of this title, the

factors which affect the effect of competition on the supply of the health services being reviewed." *See also* 42 C.F.R. 123.412(a)(3) ("The availability of less costly or more effective alternative methods of providing the services to be offered, expanded, reduced, relocated, or eliminated") and (4) ("The immediate and long-term financial feasibility of the proposal as well as the probable effect of the proposal on the costs of and charges for providing health services by the person proposing the service."). Maryland regulations require consideration of "the availability of less costly or more effective alternative methods of providing these services," COMAR 10.24.01.06.B(2)(d), and "[t]he immediate and long-term financial feasibility of the proposal, and the probable impact of the proposal on the costs of and charges for the provision of services by the applicant and other institutional providers in the area." COMAR 10.24.01.06.-B(2)(e).

As to this criterion, the Commission said, "Applicant's request for 31 critical care and intensive care units is not certifiable at this time," later adding, "The Commission finds that the applicant has demonstrated a need for designated definitive observation beds [as distinguished from less costly general medical/surgical beds] but that it has not adequately supported claimed cost savings."

These findings by the Commission demonstrate the inadequacy of the evidence in support of many of the minimum criteria at the 37 bed level. The certificate of need as issued by the Commission contains the following notation within its body: "Failure to meet these performances shall render this Certificate of Need null and void." We consider that language to constitute an acknowledgment by the Commission that the evidence submitted by and on behalf of Southern did not permit it to conclude, on the basis of its consideration of the whole record, that a certificate of need should be granted to Southern.

The comments of the Commission upon this last stated minimum criteria perhaps serve best to illustrate the degree of its uncertainty concerning the manner in which the 37

beds must be utilized by Southern and the financial consequences stemming from such utility to the applicant, to other health care facilities and to the general public.

The Commission contends, however, that a certificate of need in the form issued in this case is authorized by the provisions of Health General Article § 19–118(d)(4) which reads as follows:

The full Commission shall, after determining that the Committee's report is complete, vote to approve, *approve with conditions,* or deny the application on the basis of the committee's recommendation and the whole record before the Commission.

(Emphasis added).

### Conditions

We find the contention to be without merit. We have heretofore pointed out that the committee's report literally has been found by the Commission, as a whole, not to be complete in that further evidence relating to minimum criteria must be considered *before* a *viable* certificate of need may be granted. The Commission's cause is not aided by the statutory authority to "approve with conditions." In *Pirner v. State,* 45 Md.App. 50, 58, 411 A.2d 135, 140 (1980), Judge Wilner for this Court so clearly and succinctly stated "that the overriding imperative in all cases is to construe a statute reasonably so as to effectuate the intent of its enactor...."

The word "condition" must be read in its relationship to the statutory scheme that imposes upon the Commission the non delegable duty to act upon applications for a certificate of need only when there is a showing of need on the record made before the Commission. § 19–118(d).

So read, the word must be interpreted to mean a specific requirement or restriction within the unilateral capacity of the applicant to achieve or to prevent. It is impermissible for the Commission conditionally to grant a certificate of need on the basis of future evidence that the applicant may

or may not be able to adduce and that the Commission itself has on the record, declared was indispensable to the exercise of its non delegable authority.

Given the purpose and scope declared in the Federal and State Acts to produce respectively "[t]he achievement of equal access to quality health care at a reasonable cost" (42 U.S.C. § 300k), and "[t]he development of a health care system that provides for all citizens, financial and geographic access to quality health care at a reasonable cost" (§ 19–102), the "conditions" imposed by the Commission are not conditions at all—they are merely deferrals of the exercise of its non delegable authority (§ 19–118(d)) to act until additional evidence is supplied. In short, *no* decision has been made by the Commission upon the question whether Southern ultimately will or will not be entitled to receive a certificate of need.

This is not to say that the Commission may not, in the course of its review, demand that an applicant provide further evidence bearing upon its entitlement to the grant of a certificate of need and to defer action pending the receipt thereof. Indeed, the regulations adopted by the Commission provide for just such action. COMAR 10.24.-01.06C provides:

> *During the course of review* an HSA or the State Agency may require additional information from an applicant for the purpose of clarifying or more fully answering an informational requirement of the application.

(Emphasis added).

JUDGMENT OF THE CIRCUIT COURT REVERSED AND CASE REMANDED TO THAT COURT FOR AN ORDER VACATING THE ORDER OF THE COMMISSION DATED FEBRUARY 14, 1984, AND REMANDING THE CAUSE TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEES.